IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-HC-2107-FL

| | | |
|---|---|---|
| RANDAL LEE JOYNER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CYNTHIA THORNTON, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner, a state inmate, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter comes before the court on the parties' cross-motions for summary judgment (DE 9, 19) pursuant to Federal Rule of Civil Procedure 56(a). Also before the court are petitioner's motion for reconsideration (DE 17) and motion for leave to file excess pages (DE 27). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, petitioner's motion for leave to file excess pages is granted, his remaining motions are denied, and the court grants respondent's motion for summary judgment.

**STATEMENT OF CASE**

On May 21, 2014, petitioner, in the Wilson County Superior Court, pleaded no contest to two counts of obtaining property by false pretenses and one count of exploitation of an elder adult. (Pet. 1). He then was sentenced to consecutive terms of imprisonment of 11-23 months for both convictions of obtaining property by false pretenses and 19-32 months for the exploitation of an elder adult charge. (Id.) Petitioner did not appeal. (Id. at 2).

Petitioner filed a *pro se* motion for appropriate relief ("MAR") in the Wilson County Superior Court on September 24, 2014, which was denied on October 27, 2014. (Pet'r's Ex. B (DE 1-1) at 34). On November 25, 2014, petitioner filed a *pro se* motion to reconsider the denial of his MAR. Id. at 46-54. This motion was denied on December 19, 2014. (Resp't's Ex. 2 (DE 20-3). On December 29, 2014, petitioner filed a *pro se* petition for a writ of certiorari in the North Carolina Court of Appeals, seeking review of the superior court's orders denying his MAR and motion for reconsideration. (Pet'r's Ex. B (DE 1-1) at 64-74). Certiorari was denied on January 13, 2015. Id. at 81. On March 12, 2015, petitioner filed a motion to reconsider the denial of certiorari and also filed a renewed petition for certiorari. Id. at 83-97. Petitioner's motion for reconsideration and renewed petition for certiorari were denied by the North Carolina Court of appeals on March 25, 2015 and April 1, 2015, respectively. (Id. at 100; Resp't's Ex. 3 (DE 20-4)).

On May 20, 2015, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner raised the following claims: (1) his no contest plea was unknowing and unintelligent; (2) his conviction violated double jeopardy; (3) he received ineffective assistance of counsel; and (4) the denial of his MAR violated North Carolina state law. Petitioner filed a motion for summary judgment on September 8, 2015. This motion was denied as premature and the clerk of court was directed to maintain management of petitioner's claims on December 8, 2015. Petitioner renewed his motion for summary judgment on December 21, 2015. Respondent

2

filed a cross-motion for summary judgment on February 3, 2016.[1] Both motions for summary judgment were fully briefed.[2]

## STATEMENT OF FACTS

The facts, as established by the state's proffer during petitioner's plea colloquy[3], are as follows:

> THE STATE: If we had gone to trial in 13-CRS-52857, Count II, I believe the facts would have shown that on the 10th day of October of 2012, this defendant came to the home of Rufus and Lillian Swain, Hawthorne Lane here in [Wilson] . . .and told them . . . that he had done some work in their house before, which he hadn't and . . . wished to inspect it. Upon this inspection, he said that various other things needed correcting under the house and in the bathroom and came up with an estimate and was paid $24,975 altogether to correct things that either didn't need correcting or if they did need correcting were not corrected properly, if at all . . .
>
> Then in 13-CRS-52858 . . . both Rufus and Lillian Swain were in their mid-eighties. Mr. Swain being a little bit older. As such, they had limited mobility, were unable to go under the house to see what was wrong with the house, unable to go up on top of the house to see what repairs had or had not been made in that area. Therefore, they fit the statute as being an elderly adults, 14-112.2(b).
>
> Then, finally, Judge, in 13-CRS-52859, again, we are in Wilson, North Carolina just across the street on Hawthorne Lane where a Mary Ferrell, eighty-six-years old was residing.

---

[1] On January 5, 2016, the clerk of court extended the time for respondent to respond to the instant petition until February 16, 2016. (See (DE 11)). On January 26, 2016, petitioner sought reconsideration of the clerk's January 5, 2016 order. That request (DE 17) is DENIED.

[2] On February 18, 2016, petitioner sought leave to exceed the page limit in his response to respondent's motion for summary judgment. That request (DE 27) is GRANTED.

[3] During his plea colloquy, petitioner stipulated that there were "sufficient facts . . . [to] enter judgment against [him]" and "that the State of North Carolina can [proffer] what occurred." (Resp't's Ex. 1 (DE 20-2) at 29). Indeed, despite pleading no contest, petitioner testified that he was, in fact, guilty. (Id. at 28).

> She saw that her neighbors across the street, the Swains, had their house worked on by this man and his crew and went over there, asked them to take a look at a leak on her roof. Before she knew it, this man, along with his crew, were up on her roof doing some work.
>
> Also, indicated under the house there were leaks. Said there was a busted pipe when, in fact, we believe his own workers busted the pipe under the house. And that the total cost was going to be well in excess of $6,200.
>
> Again, the work either was not done or if it was done, was done in a way that left them in a worse position they were in.
>
> The thing about the roof, their own grandson had to go over there and fix the roof later on because it was still leaking when they left. So that would be the factual basis on all these cases, Judge.

(Resp't's Ex. 1 (DE 20-2) at 30-33).

## DISCUSSION

A.   Motion for Summary Judgment

    1.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

4

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407; see White v. Woodall, 134 S. Ct. 1697, 1702–07 (2014); Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013) (per curiam). A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

5

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

    2.    Analysis

        a.    Voluntariness of no contest plea

In his first claim, petitioner asserts that his no contest plea was "invalid, unknowing and unintelligent." (Pet. at 5). Petitioner raised this claim in the MAR court and it was summarily denied.

A valid guilty plea[4] constitutes the admission of the material elements of a crime. See McCarthy v. United States, 394 U.S. 459, 466 (196). A voluntary guilty plea normally forecloses an attack based on any antecedent, non-jurisdictional errors. See Tollett v. Henderson, 411 U.S. 258, 267 (1973); Meyer v. Branker, 506 F.3d 358, 367 (4th Cir. 2007) ("[I]t is well known that a defendant's guilty plea itself serves as a 'conviction,' supplying 'both evidence and verdict.'") (citing Boykin v. Alabama, 395 U.S. 238, 242, 243 n. 4 (1969)). Therefore, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims related to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett, 411 U.S. at 267.

Here, the record reflects that petitioner swore under oath that he understood he was pleading no contest to two counts of obtaining property by false pretense and one count of exploitation of an elderly or disabled person. (Resp't's Ex. 1. (DE 20-2) at 21-22). Petitioner further testified at his plea hearing that he discussed his case fully with his lawyer, that his lawyer explained the nature of

---

[4] The Supreme Court's ruling in Tollett applies to actions in which a defendant has entered a plea of no contest pursuant to North Carolina v. Alford, 400 U.S. 25, 91 (1970). Thomas v. Outlaw, No. 5:10-HC-2258-FL, 2012 WL 255336, at *2 (E.D.N.C. Jan. 27, 2012).

the charges, each element of the offenses, as well as possible defenses. (Id. at 26). Petitioner's counsel also certified that he explained to petitioner the nature and elements of the charges to which petitioner pleaded no contest. (Id.). Petitioner testified that he was satisfied with his attorney's services, and that he was entering his plea of his own free will without any undue outside influence. (Id. at 26-28). He also agreed that no person made any promises or threatened him in any way to cause him to enter the plea against his wishes. (Id. at 28). In addition, petitioner testified that he was not under the influence of alcohol, drugs, narcotics, medicines, or pills. (Id. at 26-27).

After listening to petitioner's response to the plea colloquy in open court and observing petitioner's demeanor, the trial court judge found as a fact that petitioner's plea was petitioner's "informed choice done freely, voluntarily, and understandingly." (Id. at 33). Absent extraordinary circumstances, these solemn in-court representations should be deemed conclusive. Via v. Superintendent, Powhatan Corr. Ctr., 643 F.2d 167, 171 (4th Cir. 1981); see also Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); Little v. Allsbrook, 731 F.2d 238, 239-40 n.2 (4th Cir. 1984).

Petitioner's primary contention is that his plea was involuntary because he was unaware he could be sentenced to consecutive terms of imprisonment. However, the record clearly reflects that petitioner was notified of this possibility before he entered his plea. (Resp't's Ex. 1 (DE 20-2) at 26). Therefore, petitioner's own conclusory statements contained in his *pro se* federal habeas petition, and any attached documents, are insufficient to breach the formidable barrier of Blackledge. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("In order to obtain an evidentiary hearing . . .[,] a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."),

7

abrogated on other grounds by, Gray v. Netherland, 518 U.S. 152, 165–66 (1996). Accordingly, this claim is without merit.

In sum, the MAR court's adjudication of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Thus, respondent's motion for summary judgment is GRANTED as to this claim.

      b. Double Jeopardy

Petitioner contends that his convictions violate the Double Jeopardy clause of the Fifth Amendment because his "charges came from the same place and time period, which is all the same course of conduct, with the same purpose." (Pet. at 8). Petitioner raised this claim in the MAR court and it was summarily denied.

This claim is foreclosed by petitioner's no contest plea. Agee v. Barksdale, No. 7:15-CV-00367, 2016 WL 3387515, at *9 (W.D. Va. June 15, 2016) (dismissing double jeopardy claim as waived pursuant to a plea of no contest). Moreover, this claim fails on the merits. The Supreme Court has long recognized that double jeopardy does not occur so long as each offense contains an essential element not required by the other. See, e.g., United States v. Dixon, 509 U.S. 688, 697–700 (1993); Blockburger v. United States, 284 U.S. 299, 304 (1932); Manokey v. Waters, 390 F.3d 767, 772 (4th Cir. 2004). Petitioner's two convictions for obtaining property by false pretenses both involved different victims, and thus required proof of a fact not required by another. See Blockburger, 284 U.S. at 304 ("The applicable rule is that, where the same act or transaction

8

constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."). Similarly, exploitation of an elder adult requires proof of at least one element that obtaining property by false pretenses does not. Specifically, the essential elements of obtaining property by false pretenses are: (1) a false representation of a subsisting fact or a future fulfillment or event; (2) which is calculated and intended to deceive; (3) which does in fact deceive; and (4) by which one person obtains or attempts to obtain value from another. N.C. Gen. Stat. § 14-100. By contrast, at the time of petitioner's conviction, N.C. Gen. Stat. § 14-112.2(b) stated:

> It is unlawful for a person: (i) who stands in a position of trust and confidence with an elder adult or disabled adult, or (ii) who has a business relationship with an elder adult or disabled adult to knowingly, by deception or intimidation, obtain or use, or endeavor to obtain or use, an elder adult's or disabled adult's funds, assets, or property with the intent to temporarily or permanently deprive the elder adult or disabled adult of the use, benefit, or possession of the funds, assets, or property, or to benefit someone other than the elder adult or disabled adult.

N.C. Gen. Stat. Ann. § 14-112.2 (2012). Because each of petitioner's convictions contained an essential element not required by the other, this claim is without merit.

In sum, the MAR court's adjudication of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Thus, respondent's motion for summary judgment is GRANTED for this claim.

9

### c. Ineffective Assistance of Counsel

Petitioner asserts that he received ineffective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution. Specifically, petitioner argues, *inter alia*, that counsel failed to argue that petitioner's convictions violated double jeopardy. He also contends that counsel failed to notify him of his right to appeal. Petitioner raised these claims in the MAR court and they were summarily denied.

To state a claim of ineffective assistance of counsel in the context of a guilty plea, a petitioner must satisfy a two-pronged test. Strickland v. Washington, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. Id. at 688. This court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. For the second prong, a petitioner must show that he was prejudiced by the ineffective assistance by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

These claims are also foreclosed by petitioner's no contest plea. As described in more detail above, the record reflects that petitioner's no contest plea was knowing and voluntary. Moreover, petitioner specifically testified at his plea hearing that he was satisfied with his attorney's services. (Resp't's Ex. 1 (DE 20-2) at 27). Petitioner's in-court representations during his plea hearing are deemed conclusive.

Moreover, petitioner has not presented evidence to establish that his attorney acted unreasonably even if this claim were not foreclosed by his no contest plea. On the contrary, the record indicates that petitioner was zealously represented. For example, counsel filed a motion to reduce the number of obtaining property by false pretenses charges pending against petitioner on the grounds of duplicity. (Pet'r's Ex. J (DE 1-1) at 162). Moreover, as a result of counsel's plea negotiations, the state dismissed four counts of obtaining property by false pretenses and one count of exploitation of an elder adult. (Resp't's Ex. 1 (DE 20-2) at 22). In addition, counsel presented statutory and non-statutory mitigating factors at petitioner's sentencing hearing. (Id. at 32-35).

Likewise, petitioner has not established that counsel was ineffective for failing to file a direct appeal or failing to inform him of his statutory right to appeal.[5] The United States Supreme Court in Roe v. Flores–Ortega, 528 U.S. 470 (2000), discussed an attorney's obligation to consult with his client about an appeal. In particular, the court in Flores–Ortega, provided:

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

Flores–Ortega, 528 U.S. at 480. In assessing whether an attorney had a constitutional duty to consult,

> the Court [in Flores–Ortega ] indicated that several factors were relevant, including whether the conviction followed a trial or guilty plea. In cases involving guilty pleas, the Court instructed lower courts to consider whether the defendant received the sentence bargained for

---

[5] Because petitioner pleaded no contest and was sentenced within the presumptive range, he did not have grounds to appeal as a matter of right under North Carolina law. See N.C.G.S. § 15A-1444.

11

> as part of the plea and whether the plea expressly reserved or waived appeal rights.

United States v. Poindexter, 492 F.3d 263, 268 (4th Cir. 2007) (internal quotation marks omitted).

Here, petitioner has not presented evidence to establish either prong of the Flores–Ortega test. First, petitioner has provided no evidence to establish that a rational defendant in his position would have wanted to file an appeal. Rather, the evidence in the record suggests otherwise. For instance, in exchange for petitioner's no contest plea, the state dismissed several changes, significantly reducing the amount of imprisonment that petitioner was facing for his crimes. (Pet'r's Ex. F (DE 1-1) at 129). The trial court judge specifically advised petitioner of his right to appeal and that if petitioner pled no contest there would be limitations on that right. (Resp't's Ex. 1 (DE 20-2) at 28). Petitioner swore that he understood the limitations on his right to appeal. (Id.). Moreover, the record reflects that petitioner received a sentence within the terms set forth in his plea agreement. (Id. at 41-42). Thus, petitioner failed to establish that a rational defendant in his circumstances would have wanted to file an appeal. See Pencille v. Warden Lee Correctional Institution, No. C/A No. 1:09-1862-RBH-SVH, 2010 WL 4386942, at *12 (D.S.C. Aug. 4, 2010) ("Even if Petitioner could show that his counsel's duty to consult were not excused under the circumstances, Petitioner must still demonstrate that he was prejudiced. . . . .The defendant may do this by demonstrating either that a) there were non-frivolous issues for appeal, or b) he had adequately indicated his interest in appealing.") (internal quotation omitted)), appeal dismissed, 440 F. App'x 182 (4th Cir. 2011).

Petitioner, secondly, does not argue that he expressed interest in filing an appeal or directed his counsel to file an appeal on his behalf. Trial counsel does not provide ineffective assistance by failing to notice an appeal in the absence of a request to do so from the client. See Wood v.

12

Woodson, No. 3:14–cv–136–JAG, 2014 WL 5410633, at *5 (E.D. Va. Oct. 23, 2014) (rejecting ineffective assistance claim premised on failure to file appeal where no facts showed the petitioner never requested counsel to appeal). Because there is no evidence that petitioner reasonably demonstrated to his counsel that he was interested in appealing, petitioner cannot establish the second prong of the Flores–Ortega test. Thus, counsel did not breach any duty to consult with petitioner regarding petitioner's appellate rights. For these reasons, petitioner's ineffective assistance of counsel claims are without merit.

In sum, the MAR court's adjudication of these claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)-(e). Thus, respondent's motion for summary judgment is GRANTED for petitioner's ineffective assistance of counsel claims.

        d.      MAR Court Error

In his final claim, petitioner contends that the state post-conviction MAR court violated his right to due process by failing to apply the standard of review mandated by N.C.G.S. § 15A-1419. Errors with state post-conviction proceedings are not cognizable on federal habeas review. See Lawrence v. Branker, 517 F.3d 700, 717 (4th Cir. 2008); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors and irregularities in connection with state post-conviction proceedings are not cognizable on federal habeas review). Thus, respondent's motion for summary judgment is GRANTED as to this claim.

13

B.  Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

14

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

For the foregoing reasons, petitioner's motion for leave to file excess pages is allowed (DE 27), his remaining motions are denied (DE 9, 17), and the court grants respondent's motion for summary judgment (DE 19). The certificate of appealability is DENIED, and the clerk of court is DIRECTED to close this case.

SO ORDERED, this the 18th day of August, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge